**Electronically Filed
Supreme Court
SCWC-17-0000581
29-JUN-2021
01:31 PM
Dkt. 12 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

ALLAN MICHAEL G. FELICIANO,
aka ALLAN M. GAMON FELICIANO,
Petitioner/Defendant-Appellant.

_____

SCWC-17-0000581

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000581; CASE NO. 3FFC-17-0000029)

JUNE 29, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

Michael G. Feliciano ("Feliciano") appeals his jury conviction in the Family Court of the Third Circuit ("family court") for abuse of family or household member.  Feliciano

allegedly struck the complaining witness (the "CW"), his wife, in the face in the early morning hours of January 14, 2017.

Before trial, the State of Hawai'i ("the State") filed a notice of intent to use evidence of Feliciano's "prior bad acts," seeking to introduce a 2016 incident in which Feliciano allegedly pushed the CW out of a chair ("chair incident").  The State asserted the chair incident was relevant because: (1) it contributed to the CW's medical use of marijuana; (2) Feliciano indicated his intent to raise CW's marijuana use the night of January 13, 2017; (3) it explained the CW's medical marijuana use; and (4) it would rebut Feliciano's expected defenses.  The family court ruled the State could introduce the chair incident "[i]f the door is opened" by Feliciano through evidence of the CW's marijuana use.

During direct examination, the CW testified she used medical marijuana to treat her chronic back pain.  On cross-examination, defense counsel asked about her marijuana use and the couple's prior six-month separation, but did not ask why the couple had separated.  Feliciano later testified that the couple's relationship began to deteriorate after the CW "started going heavy on marijuana usage" and that the CW voluntarily left their home in February 2016.  During his cross-examination, the family court overruled defense counsel's objection to the State

asking Feliciano about the chair incident, ruling that Feliciano had "[o]pened the door."

The family court then allowed the CW to testify as a rebuttal witness regarding the chair incident because the "defendant testified on the relationship between the parties by saying she used drugs or marijuana and that -- well, the relationship was raised and the inference also was left that she moved out for different reasons." The family court gave limiting instructions to the jury that the chair incident could only be considered as to the relationship between Feliciano and the CW as well as to Felicano's motive.

On appeal to the Intermediate Court of Appeals ("ICA"), Feliciano argued the family court abused its discretion in admitting the chair incident evidence and that the family court's limiting instructions did not mitigate the prejudicial effect of the evidence.

In its August 31, 2020 memorandum opinion, the ICA majority rejected Feliciano's arguments. State v. Feliciano, CAAP-17-0000581, 2020 WL 5111230 (App. Aug. 31, 2020) (mem.). The ICA majority ruled: (1) the family court properly admitted the chair incident evidence under the "opening the door" doctrine because Feliciano offered evidence that could be false or misleading in isolation; (2) the chair incident evidence passed muster under Hawaiʻi Rules of Evidence ("HRE") Rules 404(b) and 403 (1980);

and (3) the family court's limiting instructions mitigated any unfair prejudice resulting from the chair incident evidence. Judge Leonard dissented.

We hold the ICA erred by ruling Feliciano "opened the door" to the chair incident evidence. We have not adopted the "opening the door" doctrine and, in any event, Feliciano did not first introduce inadmissible evidence or evidence that was false or misleading in isolation. We also hold the ICA erred by ruling the chair incident evidence admissible under HRE Rule 404(b). Moreover, even if the chair incident evidence had otherwise been admissible, it should have excluded by HRE Rule 403. We further hold the family court's limiting instructions failed to mitigate the prejudicial impact of the chair incident evidence. Finally, we hold that the improper admission of the chair incident evidence was not harmless beyond a reasonable doubt.

Hence, we vacate the ICA's September 28, 2020 judgment on appeal and the family court's June 2, 2017 judgment, and we remand this case to the family court for further proceedings consistent with this opinion.

## II.  Background

### A.   Factual background

Feliciano and the CW were married around 2012,[1] and owned a house together in Kona, Hawai'i.  Feliciano worked as a porter and bartender.  He was also an ammo specialist and sergeant in the Hawai'i Army National Guard, which he had entered approximately eleven years earlier.  Feliciano is five feet six inches tall and weighs 170 pounds, and the CW is five feet tall and weighs 105 pounds.

### B.   Procedural background

#### 1.   Family court proceedings

##### a.   Pre-trial

On February 2, 2017, the State charged Feliciano via complaint with abuse of a family or household member, in violation of Hawai'i Revised Statutes ("HRS") § 709-906(1) (Supp. 2016) of the CW "[o]n or about the 13th day of January, 2017[.]"[2]

---

[1]    The CW testified she was in the process of filing for a divorce.

[2]    HRS § 709-906(1) provides in relevant part:

> (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member . . . .
>
> For the purposes of this section:
>
> . . . .
>
> "Family or household member":
>
> > (a) Means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries,

Feliciano indicated his defenses would be a lack of the requisite state of mind and self-defense.

Before trial, the State filed a notice of intent to use evidence of Feliciano's "prior bad act" at trial, specifically of "[f]acts and [c]ircumstances documented in police report C17001634 and in interviews with [the CW] detailing an incident in 2016 in which [Feliciano] pushed [the CW] out of a chair." The State indicated its intent to introduce this evidence "pursuant to Hawaii Rules of Evidence Rule 404 to show state of mind (victim; witnesses; and Defendant) motive, intent, plan, absence of mistake, knowledge, modus operandi, and/or other R. 404 purposes." The State argued: (1) the chair incident contributed to the CW's medical marijuana use; (2) Feliciano had indicated his intent to raise the issue of the CW's marijuana use on the night of January 13, 2017; (3) the chair incident was necessary to explain the CW's medical marijuana use; and (4) the chair incident was also relevant to rebut Feliciano's expected defenses of ignorance or mistake as well as self-defense regarding the initial aggressor issue. Feliciano opposed and also filed a motion in limine to exclude any such evidence.

persons in a dating relationship as defined under section 586-1, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit[.]

The family court[3] ruled the chair incident would be admitted if Feliciano "opened the door," stating:

> [Deputy prosecuting attorney ("DPA")]: —- far as the prior bad acts, the State is just trying to reserve its ability to bring up a prior incident between the defendant and the complainant with regard —-
>
> . . . .
>
> THE COURT: . . . .
> So you talking about prior actions of the defendant may be relevant?
>
> [DPA]: If that —-
>
> THE COURT: If the –
>
> [DPA]: —- her marijuana usage is brought up.
>
> THE COURT: If the door is opened.
>
> [DPA]: Yes.
>
> THE COURT: So well to that extent, if the motion in limine is prohibiting that, motion is denied.

Trial then began.

### b. Jury trial

#### i. Feliciano's opening statement

During Feliciano's opening statement, the deputy public defender ("DPD") described the CW as being "under the influence of various substances" and "behaving aggressively" on January 13, 2017, Feliciano's actions as "justified," and the couple's relationship as "rocky."

---

[3] The Honorable Ronald Ibarra presided.

### ii. The CW's testimony

The State called the CW as its first witness, who testified as follows.

On the evening of January 13, 2017, the CW and Feliciano had a get-together with friends at their home. Feliciano was "drinking the whole time"; the CW did not know how much alcohol Feliciano consumed. The CW did not drink alcohol that evening, but she used marijuana. She had a valid medical marijuana license for chronic back pain.

At some point during the evening, "some roughhousing" broke out between two of the male guests and Feliciano became involved. The CW intervened to calm Feliciano down to keep him from fighting. Feliciano told her to "get out of his way[,]" while grabbing and twisting her wrists. She then went inside the house, turned off the lights, pulled out the pull-out couch bed in the living room, and fell asleep alone with her clothes on.

In the early morning hours of January 14, 2017, Feliciano pulled the CW off of the couch bed. She saw one of Feliciano's friends also sleeping on the couch bed with his clothes on. Feliciano told her to "get [her] ass out of bed" and asked "what the heck was [she] doing sleeping with his friend." She responded that "[she] didn't wanna go and sleep in the room with him, in the same bed, and [she] told him to take his friend with

him 'cause [she] was sleeping on the couch first."  Feliciano, who appeared to be under the influence of alcohol, "got mad at [her]."  He said, "Oh, why you don't wanna come sleep in the room with me, 'cause I hurt you?  You don't know what hurting is.  You don't know what abuse is.  I'll show you."

Feliciano then punched the left side of the CW's face with his right fist.  She had her arms down at her side when Feliciano struck her; she blacked out and fell to the ground.[4]  When she came to, she was lying on the ground and Feliciano was angrily standing over her.  The CW went into the bathroom and took pictures of her face, and when she went back to the living room, the friend was gone.  She did not call the police and went back to sleep.

The next morning, the CW went to get a massage.  Feliciano texted, asking if he had hit her the night before, stating that if he had, he was sorry.[5]  She did not respond.  Approximately four days after Feliciano struck her, the CW went to the police

---

[4]    The complaint alleged the abuse occurred "[o]n or about the 13th day of January, 2017[.]"  Although evidence was elicited that Feliciano grabbed and twisted the CW's wrists that night, the State appeared to elect the punch that allegedly occurred the morning of January 14, 2017, as the abuse incident; in any event, the jury was given an unanimity instruction.  See State v. Hironaka, 99 Hawai'i 198, 207-08, 53 P.3d 806, 815-16 (2002) (an unanimity instruction is required, absent an election by the prosecution, when at trial, the prosecution adduces proof of two or more separate and distinct culpable acts and the prosecution seeks to submit to the jury that only one offense was committed).

[5]    A screenshot of the text messages was received into evidence.

station, where she had three photographs of her face taken.[6]  She then went to the family court to obtain a temporary restraining order ("TRO").[7]

On cross-examination, the DPD asked the CW about her marijuana use, medical marijuana card, and the other prescribed medications she took the night of January 13, 2017.[8]  The DPD also asked about the couple's prior separation, and the CW responded she had been separated from Feliciano for six months. The DPD did not ask why the couple had separated.

### iii. Feliciano's testimony

Feliciano disputed the CW's account of events, testifying as follows.

After the get-together, Feliciano fell asleep in the master bedroom and when he woke up, the CW was not in bed with him. Worried, Feliciano looked for her and found her in the living room on the couch bed "under the covers" with one of his friends.  He woke the CW and pulled her up to go back to the

---

[6]     The photographs, which showed a laceration and slight discoloration on the left side of the CW's face, were admitted into evidence.

[7]     The CW testified regarding the January 30, 2017 TRO hearing, and the family court received into evidence a video disc that recorded the TRO hearing; the TRO hearing was played for the jury.  According to the CW, Feliciano testified at the TRO hearing that he pulled the CW out of the bed and that he open-hand slapped the CW.

[8]     The CW testified she took Trazodone, which was supposed to help her sleep, and Clonazepam, which was supposed to help with her night terrors. The CW also stated she was prescribed Progesterone for anxiety and Cymbalta for depression; although she stated she always took her medication as prescribed, it is unclear from the record whether she was also on Progesterone and Cymbalta on the night of January 13, 2017.

bedroom.  As they were walking to the bedroom, she pulled her hand away from his, became angry, started yelling, and kept pushing him; Feliciano reacted by slapping the CW's face.  He then walked into his room, and he did not see the CW again that night.  Feliciano denied telling the CW, "You don't know what abuse is, I'll show you what abuse is."

Feliciano then testified regarding the effect of the CW "going heavy on marijuana usage" on their relationship: the CW stopped going to work, watched television while "smoking all day[,]" and Feliciano had to do the chores after working all day.  The CW was on a number of medications, including marijuana.  Their relationship was "rocky" and although the CW wanted to separate, he did not want to as he felt they could work things out.

On cross-examination, the State asked Feliciano, "Did [the CW] move out because of something you had done to her in February of last year?"  Defense counsel objected; the family court overruled the objection, stating, "Opened the door."  The State then asked, "Did you push her out of a chair in February because you were upset about something to eat?" to which Feliciano responded he had not.

### iv. The CW's chair incident testimony and the family court's limiting instructions

After the defense rested and the jury left the courtroom, the State stated it would call the CW as a rebuttal witness. After a discussion with counsel, the family court indicated it would instruct the jury that the chair incident evidence could be considered only on "the issue of the relationship of the parties" and for no other reason.

After the jury returned to the courtroom, the family court held a bench conference, stating:

> THE COURT: This is a bench conference on the record.
> The reason the court is giving this instruction and to allow the rebuttal question is because the defendant testified on the relationship between the parties by saying she used drugs or marijuana and that -- well, the relationship was raised and that the inference also was left that she moved out for different reasons. That was the inference. And the court has also looked at the 403 balancing factor, prejudicial versus probative, and finds this is more probative than prejudicial.

The family court then instructed the jury as follows:

> THE COURT: . . . .
> So, Ladies and Gentlemen, you are about to hear evidence that the defendant at another time may have committed other wrongs. This evidence, if believed by you, may be considered only on the issue of the relationship of the parties. You must not -- do not consider this evidence for any other reason. You must not use this evidence to conclude that because the defendant at another time may have committed other wrongs that he is a person of bad character and, therefore, must have committed the offense charged in this case.

The State then called the CW as a rebuttal witness:

> Q. Ma'am, on January 13th, 2017, did you push the defendant before he hit you in the face?
>
> A. No, I did not.

12

> Q. In -- when you moved out in 2016, did you move out because he pushed you out of a chair in February of 2016?
>
> A. Yes, yes.

After the parties rested, during its instructions to the jury, the family court instructed the jury in relevant part:

> [THE COURT:] Several times during the trial I've told you that certain evidence was allowed in this trial for a particular and limited purpose. When you consider that evidence, you must limit your consideration to that purpose.
>
> . . . .
>
> You have heard evidence that the defendant at another time may have engaged in other acts. This evidence, if believed by you, may be considered only on the issue of defendant's motive to commit the offense charged. Do not consider this evidence for any other reason. You must not use this evidence to conclude that because the defendant at other times may have engaged in other acts that he is a person of bad character and, therefore, must have committed the offense charged in this case. In considering the evidence for the limited purpose for which it has been received, you must weigh it in the same manner as you would all other evidence in this case and consider it along with all other evidence in this case.

### v.    Sentence and appeal

On June 2, 2017, the jury convicted Feliciano of the charged offense. The family court sentenced Feliciano to probation for two years with conditions and entered its judgment that same day.

### 2.    ICA proceedings

On appeal to the ICA, Feliciano argued (1) the family court abused its discretion when it allowed the State to cross-examine Feliciano about the chair incident and allowed the State to call the CW to rebut Feliciano's testimony denying the chair

13

incident; (2) the chair incident evidence should have been excluded under HRE Rule 404(b);[9] and (3) the limiting instructions did not mitigate the prejudice from the chair incident evidence.  Feliciano also argued that the nature of the marital relationship, and the reasons why the CW moved out of the house, were only "slightly relevant," if at all, to either party's theory of the case.

The State responded: (1) Feliciano "opened the door" to the chair incident evidence by testifying on direct examination about the alleged deterioration of the marriage due to the CW's marijuana use; and (2) the chair incident evidence independently passed muster under HRE Rule 404(b).  The State also argued "the entire defense was to portray [the CW] as an unfaithful and intoxicated person of bad character[.]"  The State contended "[d]efense counsel's presentation at trial suggested the evidence of [the CW's] use of marijuana was very relevant[,]" and that Feliciano adduced evidence of the CW's marijuana use to attack her character and credibility.

---

[9]     HRE Rule 404(b) provides in relevant part:

> Other crimes, wrongs, or acts.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

The ICA majority affirmed.  Feliciano, mem. op. at 2.  It ruled the family court did not abuse its discretion by allowing the State to (1) cross-examine Feliciano about the chair incident, then (2) call the CW to rebut Feliciano's testimony.  Feliciano, mem. op. at 21.  Specifically, the ICA majority concluded: (1) Feliciano "opened the door" to the chair incident evidence because Feliciano's testimony "created at least the strong impression that the CW's marijuana usage had led to the deterioration of the couple's relationship and their temporary separation" and the State was entitled to counter that impression; (2) the chair incident evidence independently passed muster under HRE Rule 404(b); and (3) the limiting instructions mitigated any unfair prejudice.  Feliciano, mem. op. at 13-21.

Judge Leonard dissented ("the ICA dissent").  Feliciano, mem. op. at 22 (Leonard, J., dissenting).

**3.  Certiorari application**

On certiorari, Feliciano presents the following question: "Whether the ICA gravely erred when it concluded that 'the Family Court did not abuse its discretion in allowing the State (1) to cross-examine Feliciano about the chair incident, and (2) to call his wife, to rebut Feliciano's testimony about the chair incident.'"

15

## III. Standards of review

### A.  Evidentiary rulings

"The appellate court applies 'two different standards of review in addressing evidentiary issues.  Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard.'"  State v. Acker, 133 Hawai'i 253, 274, 327 P.3d 931, 952 (2014).

### B.  Admissibility of prior bad acts

> "[A] trial court's balancing of the probative value of prior bad act evidence against the prejudicial effect of such evidence under HRE Rule 403 (1993) is reviewed for abuse of discretion."  State v. Cordeiro, 99 Hawai'i 390, 404, 56 P.3d 692, 706 (2002) (quoting State v. Torres, 85 Hawai'i 417, 421, 945 P.2d 849, 853 (App. 1997)).  When such an abuse of discretion is identified, it is grounds to vacate a conviction unless it is harmless beyond a reasonable doubt.  State v. Kazanas, 138 Hawai'i 23, 43, 375 P.3d 1261, 1281 (2016).

State v. Gallagher, 146 Hawai'i 462, 470, 463 P.3d 1119, 1127 (2020) (alteration in original).

### C.  Jury instructions

> When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.  Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.  However, error is not to be viewed in isolation and considered purely in the abstract.  It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled.  In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.  If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment

16

> of conviction on which it may have been based must be set
> aside.

State v. Nichols, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006)

(cleaned up).

## IV.  Discussion

### A.  The family court erred in ruling Feliciano "opened the door" to the chair incident

Feliciano argues the ICA erred in concluding he "opened the door" to the chair incident evidence.

"This court has stated that the 'opening the door' doctrine is essentially a rule of expanded relevancy."  State v. Miranda, 147 Hawai'i 171, 183, 465 P.3d 618, 630 (2020) (citing State v. Lavoie, 145 Hawai'i 409, 422, 453 P.3d 229, 242 (2019)).  Under the general formulation of this doctrine, "when one party presents inadmissible evidence to the jury, the opposing party is permitted to adduce pertinent evidence that would otherwise be inadmissible in order to rebut the improperly introduced evidence."  Id. (citing Lavoie, 145 Hawai'i at 422, 453 P.3d at 242).  "The extent of this doctrine is limited, and it does not allow a party to adduce inadmissible evidence for the purpose of rebutting inferences raised by the introduction of admissible evidence."  Id. (citing Lavoie, 145 Hawai'i at 422-23, 453 P.3d at 242-43).

This court has not yet adopted the "opening the door" doctrine.  See State v. Salavea, 147 Hawai'i 564, 577, 465 P.3d

17

1011, 1024 (2020).  In this case, the "opening the door" doctrine would in any event not have allowed admission of the chair incident evidence because Feliciano's testimony regarding the CW's marijuana use was admissible.  See State v. Calara, 132 Hawaiʻi 391, 402, 322 P.3d 931, 942 (2014) ("[A] defendant is entitled to cross-examine a witness concerning the witness's drug use and addiction at or near the time of the incident to the extent that it affected the witness's perception or recollection of the alleged event[.]" (cleaned up)).  Thus, under the doctrine's general formulation, Feliciano's testimony regarding the CW's marijuana use was admissible and not properly countered by the chair incident evidence.

As noted by Judge Leonard in her dissent, however, the State does not even argue on appeal that Feliciano introduced inadmissible evidence and therefore opened the door to the State's introduction of inadmissible evidence.  Feliciano, mem. op. at 24 (Leonard, J., dissenting).  Instead, the ICA majority adopted the State's argument that Feliciano offered evidence that could be shown to be false or misleading in isolation, as Feliciano's testimony "created at least the strong impression that the CW's marijuana usage had led to the deterioration of the couple's relationship and their temporary separation."  Feliciano, mem. op. at 13-14.  The ICA majority cited to Lavoie, which recognized "authority from other jurisdictions for the

proposition that the door may also be opened to inadmissible evidence when a party offers admissible evidence that is false or misleading if considered in isolation." Feliciano, mem. op. at 12 (quoting Lavoie, 145 Hawai'i at 424, 453 P.3d at 244).[10]

The ICA majority concluded the chair incident evidence admissible under this iteration of the doctrine "to place Feliciano's testimony in its proper context and to correct the allegedly false impression created by that testimony." Feliciano, mem. op. at 14. According to the ICA majority, Feliciano presented evidence "false or misleading if considered in isolation" that portrayed the CW "as an unfaithful, drug-abusing spouse who was responsible for the couple's prior separation, as well as for Feliciano's conduct on the night he struck her." Feliciano, mem. op. at 13. It opined the chair incident evidence challenged Feliciano's account of the reason for the couple's separation; this evidence in turn "shed light on the purportedly true nature of the couple's relationship." Id.

But as Judge Leonard noted in her dissent, this court may have implicitly rejected this alternative formulation of the "opening the door" doctrine. See Feliciano, mem. op. at 24 n.1

---

[10] This court concluded that "such a rule would not apply here even if this court were to adopt it because no aspect of [the witness's] testimony was shown to be false or misleading." Lavoie, 145 Hawai'i at 424, 453 P.3d at 244.

(Leonard, J., dissenting).[11]  We need not decide whether we have done so, however, as application of this formulation of the doctrine is limited "to situations in which the originally submitted evidence creates 'significant prejudice.'"  State v. Fukusaku, 85 Hawai'i 462, 497, 946 P.2d 32, 67 (1997).  Feliciano's testimony did not create "significant prejudice."  Whether Feliciano and the CW's marriage was "rocky" and, if so, whether the CW's marijuana use contributed to the decline of their marriage was barely relevant, if at all, to whether Feliciano had committed abuse in the early morning hours of January 14, 2017.  Any alleged lack of fidelity was also unrelated to the elements of the offense.

All in all, the ICA majority erred in concluding the chair incident evidence was admissible under the "opening the door" doctrine.  An "expanded rule of relevancy" cannot become a vehicle for admitting otherwise clearly inadmissible and

---

[11]    In State v. Fukusaku, we stated:

> We also disagree with the Prosecution's contention that defense counsel "opened the door" to admission of the [luminol and phenolphthalein] test results.  Although the Prosecution cites no authority, its argument appears to be based on the doctrine of "curative admissibility," also known as "opening the door" or "fighting fire with fire."  Under this doctrine, when one party introduces inadmissible evidence, the opposing party may respond by introducing [their] own inadmissible evidence on the same issue.  We note that this doctrine is subject to abuse and that most jurisdictions have limited its use to situations in which the originally submitted evidence creates significant prejudice.

85 Hawai'i 462, 497, 946 P.2d 32, 67 (1997) (cleaned up).

prejudicial evidence. As the "opening the door" doctrine is inapplicable, the admissibility of the chair incident evidence must be evaluated on its own merit. See Lavoie, 145 Hawai'i at 425, 453 P.3d at 245. The ICA majority also erred in this regard.

**B.    The chair incident evidence was not admissible under HRE Rule 404(b)**

**1.    General principles regarding the admission of evidence under HRE Rule 404(b)**

Feliciano also argues the ICA majority erred by concluding the chair incident evidence independently passes muster under HRE Rule 404(b). HRE Rule 404(b) provides in relevant part:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

"The list of permissible purposes in Rule 404(b) is not intended to be exhaustive 'for the range of relevancy outside the ban is almost indefinite.'" State v. Behrendt, 124 Hawai'i 90, 103, 237 P.3d 1156, 1169 (2010).

> Rule 404(b) was intended not to define the set of permissible purposes for which bad-acts evidence may be admitted but rather to define the one impermissible purpose for such evidence: a person who commits a crime probably has a defect of character; a person with a defect of character is more likely than people generally to have committed the act in question.

Id. (cleaned up).

21

"When evidence is offered for substantive reasons rather than propensity, a trial court must additionally weigh the potential prejudicial effects of the evidence against its probative value under HRE Rule 403." Id. HRE Rule 403 provides that relevant evidence[12] "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Thus, this court must determine (1) if the chair incident evidence was probative of any fact of consequence other than character and propensity; and, if so, (2) whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice to Feliciano.

### 2. The chair incident evidence was inadmissible under HRE Rule 404(b)

In its limiting instruction to the jury, the family court instructed the jury it was to consider the chair incident evidence "on the issue of the relationship of the parties" to purportedly provide context about Feliciano and the CW's relationship and "that the inference also was left that [the CW] moved out for different reasons." In its closing instructions

---

[12] "Relevant evidence" is defined broadly as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." HRE Rule 401.

22

to the jury, the family court then indicated it had admitted Feliciano's prior bad act to be considered by the jury "only on the issue of defendant's motive to commit the offense charged."

This court has upheld the admissibility of prior instances of domestic abuse to prove particular issues that arise in domestic abuse cases.  In State v. Clark, this court affirmed the defendant's conviction for the attempted second degree murder of his wife.  83 Hawai'i 289, 307, 926 P.2d 194, 212 (1996).  During the jury trial, the wife recanted the charge, although she had admitted to having told a detective and others that the defendant had stabbed her.  83 Hawai'i at 292-93, 926 P.2d at 197-98.  The wife stated that her original story was "a total lie[,]" thereby completely exculpating the defendant.  83 Hawai'i at 293, 926 P.2d at 198.  The State introduced into evidence the wife's original statements to impeach her recantation, and the State was allowed to question the wife regarding two police investigations of abuse between herself and the defendant, during both of which the wife initially exculpated the defendant, but later stated he was violent.  Id.

This court concluded the trial court properly admitted evidence of the two police investigations.  83 Hawai'i at 302, 926 P.2d at 207.  With respect to relevance, this court held:

> [W]e hold that, where a victim recants allegations of
> abuse, evidence of prior incidents of violence between the
> victim and the defendant are relevant to show the trier of

> fact the context of the relationship between the victim and the defendant, where, as here, that relationship is offered as a possible explanation for the victim's recantation.

Id.[13]

Clark, however, is clearly distinguishable.  Clark was limited to admitting prior incidents of domestic violence to show the context of the relationship between the defendant and the victim to explain the victim's recantation.  Unlike Clark, the context of the relationship between the CW and Feliciano was not offered as a possible explanation for the victim's recantation, "a central fact of consequence."  In this case, the CW's reason for moving out of their home eleven months before the alleged incident underlying the abuse charge was not a "central fact of consequence" as to whether Feliciano committed the charged offense.  The chair incident evidence was not admissible under HRE Rule 404(b) to show the context of the relationship between Feliciano and the CW.

The ICA majority also opined, however, that the full context of Feliciano and the CW's relationship bore on Feliciano's self-defense justification.  Feliciano was charged with intentionally, knowingly, or recklessly causing physical

---

[13]   We also held the probative value of the prior acts outweighed prejudice where the relationship between the defendant and the wife was offered to explain a central fact of consequence -- the wife's recantation.  83 Hawai'i at 303, 926 P.2d at 208; see also State v. Asuncion, 110 Hawai'i 154, 165-66, 129 P.3d 1182, 1193-94 (App. 2006) (concluding evidence of prior acts of domestic violence was admissible where defendant's girlfriend recanted a portion of the statement she gave to police regarding abuse by the defendant).

abuse of a family or household member in violation of HRS § 709-906(1).[14]  Feliciano's asserted self-defense justification placed his state of mind in dispute.[15]  The ICA majority ruled the context of the couple's relationship, including Feliciano's alleged prior abuse of the CW, probative of whether he reasonably believed that striking the CW was immediately necessary for the purpose of protecting himself against the CW's alleged use of unlawful force against him. Feliciano, mem. op. at 15.

We have difficulty understanding the logic of how a defendant's prior acts of domestic abuse against a complaining witness would be so probative; it appears that the ICA majority's reasoning would effectively vitiate HRE Rule 404(b)'s general preclusion of a defendant's prior bad acts in domestic violence cases.  Admission of the chair incident evidence on these grounds would show propensity towards physical abuse, the very inference HRE Rule 404(b) prohibits.  Thus, the chair

---

[14]    Because HRS § 709-906 does not specify the state of mind required, HRS § 702-204 (2014) provides the default state of mind.  HRS § 702-204 states in relevant part: "When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly."

[15]    See HRS 703-304 (2014) ("the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion."); see also State v. Arakawa, 101 Hawai'i 26, 32-33, 61 P.3d 537, 543-44 (App. 2002) ("Defense counsel claimed Arakawa was justified in that he acted in self-defense, thereby putting in dispute what Arakawa's state of mind was at the time he struck Carmichael." (cleaned up)).

incident evidence was not admissible under HRE Rule 404(b) on these grounds to rebut Feliciano's self-defense justification.[16]

## C. The chair incident evidence should have been excluded by HRE Rule 403

Even if the chair incident evidence had been admissible under the "opening the door" expanded relevancy doctrine or under HRE Rule 404(b), it should in any event have been precluded under HRE Rule 403.  Under HRE Rule 403, relevant

---

[16]     The chair incident evidence was also not admissible under HRE Rule 404(b) for the other bases stated by the ICA majority.

The ICA majority also concluded that the chair incident evidence was admissible to test Feliciano's credibility after he testified that the CW's marijuana use led to the couple's previous separation eleven months earlier. Feliciano, mem. op. at 14-15. It also ruled the CW's rebuttal testimony admissible to impeach Feliciano's credibility on the grounds he had denied the CW had moved out because of the chair incident. Feliciano, mem. op. at 15.

HRE Rule 404(b) also provides that evidence of a witness's character is admissible as provided in HRE Rule 608.  HRE Rule 608(b) (1993) states in relevant part: "(b) Specific instances of conduct.  Specific instances of a witness, for the purpose of attacking the witness' credibility, if probative of untruthfulness, may be inquired into on cross-examination of the witness and, in the discretion of the court, may be proved by extrinsic evidence." The commentary to HRE Rule 608 states that subsection (b) "allows cross-examination of the witness relative to specific collateral conduct to the extent that such conduct is relevant to veracity.  Such conduct may not be independently proved even if the witness expressly denies it."

Feliciano, however, did not testify that the CW moved out due to her marijuana use or deny that the CW moved out because of the chair incident; rather, he maintained he did not know why the CW had moved out of the home. Despite Feliciano's testimony, a fact-finder could infer that the chair incident played a part in the CW moving out.  Any possible relevance of whether Feliciano was truthful regarding what led to CW moving out eleven months earlier was so tangential, however, that, in any event, it should have been precluded by HRE Rule 403 as discussed below.

Finally, the ICA majority also ruled the chair incident admissible to rehabilitate the CW's character and credibility, which Feliciano had sought to undermine through his testimony. Feliciano, mem. op. at 15.  However, the CW's marijuana usage and Feliciano seeing the CW sleeping next to his friend had been raised in the State's direct examination of the CW.  The CW's reason for moving out does not rehabilitate her character and credibility; the CW did not testify as to why she had moved out.

evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

This court has set forth a variety of factors a trial court must consider when weighing probative value versus prejudicial effect, which include

> [(1)] the strength of the evidence as to the commission of the other crime, [(2)] the similarities between the crimes, [(3)] the interval of time that has elapsed between the crimes, [(4)] the need for the evidence, [(5)] the efficacy of alternative proof, and [(6)] the degree to which the evidence probably will rouse the jury to overmastering hostility.

Gallagher, 146 Hawai'i at 470, 463 P.3d at 1127. This court stated that

> [w]hile these factors provide guidance as to the elements to consider, the court's underlying HRE Rule 403 evaluation remains whether the probative value of the evidence of prior acts is substantially outweighed by its potential for unfair prejudice. Each factor must therefore be considered in light of the purpose for which the evidence was offered[.]

Id.

Here, even if the chair incident evidence had any probative value, its probative value was substantially outweighed by its potential for unfair prejudice. The jury could have inferred that Feliciano had physically abused the CW in the past by pushing her out of a chair and acted in the same manner when he struck the CW in the face in the charged offense. "[G]iven the

27

justifiable stigma attached to domestic abusers in the eyes of the public, evidence that [Feliciano] had committed domestic abuse was highly likely to 'rouse the jury to overmastering hostility' towards him." Lavoie, 145 Hawai'i at 426, 453 P.3d at 246.

The potential for unfair prejudice substantially outweighed the probative value of the chair incident and, therefore, the chair incident evidence should in any event have been excluded under HRE Rule 403. See Clark, 83 Hawai'i at 303, 926 P.2d at 208.

**D.    The family court's limiting instructions did not mitigate the prejudice resulting from the erroneous admission of the chair incident evidence**

"A jury is presumed to follow the court's instructions." State v. Webster, 94 Hawai'i 241, 248, 11 P.3d 466, 473 (2000). "However, the ability to cure potential misuse of the evidence with a limiting instruction presupposes that the court correctly instructed the jury as to the evidence's proper use." Gallagher, 146 Hawai'i at 475, 463 P.3d at 1132. The family court's first limiting instruction, given before the CW's rebuttal testimony, instructed the jury that the chair incident evidence could be considered only on the issue of the relationship of the parties. As the ICA dissent opined, however, that instruction was prejudicially insufficient as it did not prevent the jury from, for example, concluding that the

28

couple's relationship was an abusive one and therefore Feliciano was more likely to have committed the charged offense. Feliciano, mem. op. at 34 (Leonard, J., dissenting).

The family court then instructed the jury that the chair incident evidence could be only considered on the issue of the Feliciano's motive to commit the charged offense. "[E]vidence of motive is admissible to prove the state of mind that prompts a person to act in a particular way; an incentive for certain volitional activity. Thus, proof of motive may be relevant in tending to refute or support the presumption of innocence." State v. Fetelee, 117 Hawai'i 53, 84, 175 P.3d 709, 740 (2008) (cleaned up).

Here, the alleged "volitional activity" was the alleged punch. The ICA majority did not specify how the chair incident led to Feliciano's motivation for the alleged volitional activity. The issue for the jury was whether Feliciano intentionally, knowingly, or recklessly caused physical abuse to CW in the early morning hours of January 14, 2017, in violation of HRS § 709-906(1), not Feliciano's underlying motivation for doing so.

"It was incumbent upon the court to issue a limiting instruction that properly instructed the jury as to the legitimate uses of the prior incident[] after the court admitted the misconduct evidence, particularly in light of its great

potential for misapplication by the jury."  Gallagher, 146 Hawai'i at 476, 463 P.3d at 1133.  The family court and the ICA majority therefore also erred in allowing the jury to consider the chair incident evidence for motive.

**D.    The family court's error in admitting the chair incident evidence was not harmless beyond a reasonable doubt**

Finally, we agree with Feliciano that the improper admission of the chair incident evidence was not harmless beyond a reasonable doubt.  "In applying the harmless beyond a reasonable doubt standard, the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction."  146 Hawai'i at 481, 463 P.3d at 1138 (cleaned up).

There was a reasonable possibility that the improper admission of the evidence could have contributed to Feliciano's conviction.  The critical issue at trial was whether Feliciano's act in striking the CW in the face was abuse or in self-defense.  As noted, this case was largely a credibility contest; this was not a case "[w]here there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt[.]"  State v. Toyomura, 80 Hawai'i 8, 27, 904 P.2d 893, 912 (1995).  Admission of the evidence could have contributed to the conviction and was therefore not harmless beyond a reasonable doubt.

## V.    Conclusion

Based upon the reasons stated, we vacate the ICA's September 28, 2020 judgment on appeal and the family court's June 2, 2017 judgment, and we remand to the family court for further proceedings consistent with this opinion.

William H. Jameson, Jr.,
for petitioner

Charles E. Murray III,
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

