**NOT FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000591
07-OCT-2022
07:51 AM
Dkt. 87 MO**

NO. CAAP-18-0000591

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


STATE OF HAWAI‘I, Plaintiff-Appellee,
v.
STEVEN C. ALONGI, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1CPC-17-0001258)


**MEMORANDUM OPINION**
(By:  Hiraoka, Presiding Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant Steven C. **Alongi**, also known as Steven Clark Alongi, appeals from the **"Judgment** of Conviction and Probation Sentence" entered by the Circuit Court of the First Circuit on June 26, 2018.[1]  For the reasons explained below, we affirm the Judgment.

On September 8, 2017, Alongi was charged by felony information and non-felony complaint with (1) Unauthorized Entry Into Motor Vehicle in the First Degree and (2) Assault in the Third Degree.  He pleaded not guilty.

Jury trial began on January 17, 2018.  The complaining witnesses were spouses **Julia** and **Anthony**.  They went through the Kunia Wendy's drive-thru on April 24, 2017.  Julia was driving; Anthony was sitting in the passenger seat.  They got their food.  Julia reversed into a handicap stall in the parking lot.  A

---

[1]    The Honorable Paul B.K. Wong presided.

vehicle drove into the parking lot and reversed into the handicap stall on the passenger side of Julia's car. The man driving the vehicle stared at them aggressively. Julia stared back at him. The man started to film Julia and Anthony. Julia reached for her phone to film the man. She then realized that she forgot to put up her handicap placard; she put the placard up and asked the man if that was the problem. An argument followed. Anthony called the police.

While Anthony was on the phone, the man walked to their car, reached in, and started punching Anthony. Julia got out and walked around the back of her car; however, the man got back into his car and started it. Julia said, "yeah, that's what I thought." The man turned off his car, got out, and asked her "what did you think?" Julia told the man, "that you're a fuckin' coward." The man punched Julia in the mouth. Julia punched him back in the mouth. The man punched Julia about four more times on the left side of her face and she fell to the ground.

Anthony testified that two persons then intervened. Julia believed that one was a customer and the other was a Wendy's employee. The man, however, got in his car and "sped out of the parking lot."

Julia identified Alongi as the man that assaulted them. The deputy prosecuting attorney (**DPA**) asked Julia: "Are you certain that the defendant sitting in the courtroom here today is the man that punched you and your husband on April 24th of 2017?" She responded, "You know, there's always that little bit of doubt."

Anthony also testified that he participated in the photographic lineup conducted by the police. He told the officer, "I'm not sure. I -- I don't remember exactly, I can't identify." At trial, however, Anthony testified that he was absolutely certain Alongi was the man who reached in the car window and punched him.

Gabriel **Billimon** testified at trial. He was working at Wendy's on the day of the incident. He took out the trash. He walked past two vehicles — a silver-looking SUV and a grayish

colored four-door Chevy.  There appeared to be one person in the Chevy and two people in the SUV.  Billimon heard "somebody screaming stop, stop what you doing."  He looked back and saw the driver of the Chevy punching a male in the passenger seat through the window of the SUV.  A woman got out of the driver's side of the SUV and told the driver of the Chevy to stop what he was doing.  The driver of the Chevy walked toward the woman and began "blowing the lady[,]" or hitting her with both hands.  The driver of the Chevy hit the woman about six times before she fell to the ground.  A customer then approached the driver of the Chevy and the woman, and the driver of the Chevy started to back off.  Billimon walked up behind the driver of the Chevy and hit him in the thigh while he was getting into his car, to prevent him from leaving, but he was able to drive off.

Billimon identified Alongi as the driver of the Chevy. Billimon had also identified Alongi in the photographic lineup conducted by the police.  He explained that he saw Alongi at least twice before, "sleeping in the [Wendy's] parking lot in his car."  On those occasions, his boss would instruct him to tell Alongi he could not park there and Alongi would leave the premises.  Billimon stated he was "[h]undred percent" certain that Alongi was "the man that [he] had seen on those prior occasions, the man that [he saw] punching those people, [and] the same man that [he] identified . . . in court[.]"

The jury found Alongi guilty as charged on both counts. The Judgment was entered on June 26, 2018.  This appeal followed.

## POINTS OF ERROR

Alongi raises five points of error:

1. "The inadmissible and prejudicial expert/ pseudo-expert opinions on Alongi's guilt offered by Juror Croucher and Juror Nguyen tainted the jury";

2. "The Circuit Court abused its discretion in denying Alongi's first motion for mistrial based on the [DPA's] misconduct in adducing

Detective Carreira's highly prejudicial comments";

3. "The Circuit Court abused its discretion in denying Alongi's second motion for mistrial based on Julia's admitted violation of the witness exclusionary rule";

4. "Alongi was deprived of his constitutional right to testify where his stated decision not to testify was forced upon him by the [deputy public defender]"; and

5. "There was no substantial evidence to support Alongi's convictions."

## STANDARDS OF REVIEW

1. A trial court has discretion to regulate voir dire to keep the questioning within reasonable bounds to assist in impaneling an impartial jury. State v. Churchill, 4 Haw. App. 276, 279, 664 P.2d 757, 760 (1983) (citing Hawaiʻi Rules of Penal Procedure Rule 24(a)).

2. and 3. The denial of a motion for mistrial "is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion." State v. Pasene, 144 Hawaiʻi 339, 365, 439 P.3d 864, 890 (2019) (citing State v. Furutani, 76 Hawaiʻi 172, 178-79, 873 P.2d 51, 57-58 (1994)).

4. The validity of a criminal defendant's right to testify is a question of constitutional law reviewed under the right/wrong standard. State v. Celestine, 142 Hawaiʻi 165, 169, 415 P.3d 907, 911 (2018) (citing State v. Gomez-Lobato, 130 Hawaiʻi 465, 468-69, 312 P.3d 897, 900-01 (2013)).

5. When a criminal defendant challenges the sufficiency of the evidence to support a conviction, the evidence must be considered in the strongest light for the prosecution. See State v. Kalaola, 124 Hawaiʻi 43, 49, 237 P.3d 1109, 1115 (2010).

> The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

> Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Id. (cleaned up).

## DISCUSSION

### 1. The circuit court did not plainly err by not sua sponte striking voir dire responses given by two potential jurors.

Alongi argues that during voir dire two potential jurors — **Croucher** and **Nguyen** — impermissibly expressed "expert/pseudo-expert opinions" that Alongi was guilty. Croucher disclosed that he was a psychologist and "an active member of the Center of Law and Science, and that's kind of like bridging neuropsychology and law." Nguyen disclosed that he grew up "in a low income neighborhood" and had "seen many things. . . . I witnessed violence, murder." Both expressed opinions that Alongi was guilty. Alongi did not object during the voir dire or move to strike Croucher's or Nguyen's opinions;[2] accordingly, we review for plain error.

After the jury was sworn but before opening statements were given, the circuit court instructed the jury:

> In terms of considering what is evidence and what is not, again, evidence comes in the form of sworn testimony of witnesses and any exhibits received into evidence.
>
> A question asked by a lawyer is not evidence. Objections made by lawyers also are not evidence. And *questions asked and responses of jurors during jury selection also are not evidence.* The opening statements and the closing arguments of the lawyers as I told you also are not evidence. And any testimony that the court may exclude or strike is also not evidence in the case.

(Emphasis added.) "A jury is presumed to follow the court's instructions." State v. Feliciano, 149 Hawaiʻi 365, 377, 489 P.3d 1277, 1289 (2021) (citation omitted). Nothing in the record

---

[2] Alongi challenged Croucher for cause. The State did not object. The circuit court granted the challenge. Alongi also challenged Nguyen for cause. The circuit court granted the challenge over the State's objection.

points to the contrary in this case. On this record, we cannot conclude that the circuit court committed plain error during jury voir dire.

> **2. The circuit court did not abuse its discretion by denying Alongi's first motion for mistrial.**

Alongi argues that the circuit court erred by denying his first motion for mistrial because "the [DPA] engaged in misconduct by adducing Detective Carreira's irreparably prejudicial comments that informed the jurors that he deal[t] with 'Major Crimes' and felonies."

Alongi's first motion for mistrial was based upon testimony given by Detective Carreira. On direct examination, Detective Carreira testified:

> Q        Mr. Carreira, what do you do for a living, sir?
>
> A        I'm a detective with the Honolulu Police Department.
>
> Q        How long have you been employed with HPD?
>
> A        Um -- going on 14 to 15 years.
>
> Q        Are you assigned to a particular division?
>
> A        Yes, ***Major Crimes Detail***.
>
> Q        As a detective with the ***Major Crimes Detail***, what are some of your general duties and responsibilities?
>
> A        Investigate cases, go to scenes, interview witnesses. You know, basic -- basically investigate any kind of criminal case, ***normally a felony level***.
>
> [DEFENSE COUNSEL]: Objection, Your Honor.

(Emphasis added.)

Alongi did not object to the questions that elicited the allegedly improper testimony; he objected only to Detective Carreira's answers. The circuit court sustained the objection. The following exchange then took place:

> THE COURT: How do you want me to cure? An instruction or leave it alone? Because he can't -- he's investigated felonies, doesn't necessarily mean that this one is a felony.

6

[DEFENSE COUNSEL]:  Yeah. I don't know how to remedy it.  Does the court have a preference?

THE COURT:  Well, if I try to give a curative instruction now, I think it's gonna be obvious and it draws attention to it.

[DEFENSE COUNSEL]:  I don't know, Judge.

THE COURT:  But maybe I make -- but I may direct the prosecutor to ask whether or not he investigates all kinds of criminal offenses.

[DEFENSE COUNSEL]:  Okay.

THE COURT:  But I'll hear your thoughts.

[DPA]:  Judge, that was an unanticipated response.  However, if defense counsel would and the court would like me to cure it, I'll do what I can to cure that.  And then plus, I mean, that taken together with the fact that he works for Major Crimes I think further complicates the issue.

THE COURT:  And I guess the fir --

[DEFENSE COUNSEL]:  *I don't want a mistrial.* (Indiscernible).

THE COURT:  So my first question is do you want me to [give] a curative instruction?  My first thought would be no.  But if you want me to, I'll give one.

[DEFENSE COUNSEL]:  I think I have to, I have to ask for a curative instruction.

THE COURT:  So I'm going to strike testimony?

[DEFENSE COUNSEL]:  Yeah, just to strike I guess, yeah, the last response without repeating it should be stricken and not to -- they are not to consider it in their -- I guess in their evaluation of the facts of this case or in deliberation of this case.

THE COURT:  Okay.  I'll give a curative instruction.

The next thing I'm going to order is when they're talking, when you ask Detective Carreira about his jobs, his duties, and his responsibilities that you lead so that he stays away from major crimes and from felony-level offenses.

[DPA]:  Judge, I'll move on beyond the whole issue, beyond his background at this point, if that's beneficial to the court.  But if the court would like me to clarify that he investigates all types of crimes, I'm happy to do that as well.

[DEFENSE COUNSEL]:  I think that would just draw more attention (indiscernible) --

[DPA]:  I'll just --

[DEFENSE COUNSEL]:  -- alleged crimes or whatever.

> [DPA]:  I'll just move on, if that's okay.
>
> [DEFENSE COUNSEL]:  Okay.

(Emphasis added.)  The circuit court then gave the following curative instruction:

> Ladies and gentlemen of the jury, Detective Carreira's last two answers are stricken from the record.  You are not to consider it during your deliberations of this case in any way.

Nevertheless, Alongi later moved for a mistrial.  The circuit court denied the motion.  Because the jury is presumed to follow the court's instructions, it cannot be said that Alongi was prejudiced by Detective Carreira's statements.  State v. Acker, 133 Hawaiʻi 253, 279, 327 P.3d 931, 957 (2014).  The circuit court did not abuse its discretion in denying Alongi's first motion for mistrial.

> **3.  The circuit court did not abuse its discretion by denying Alongi's second motion for mistrial.**

The circuit court invoked Rule 615 of the Hawaii Rules of Evidence (**HRE**), commonly referred to as the "witness exclusion rule," before the start of Alongi's trial.

> **Exclusion of witnesses**.  At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.

Rule 615, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (2016).  "The purpose of HRE Rule 615 is to prevent the shaping of testimony by one witness to match that of another, and to discourage fabrication and collusion."  State v. Elmaleh, 7 Haw. App. 488, 492, 782 P.2d 886, 889 (1989) (cleaned up).

Alongi allegedly punched complaining witness Anthony as Anthony was seated in his car.  Alongi then allegedly punched complaining witness Julia after Julia confronted Alongi about punching Anthony.  Immediately after the incident, Anthony was not able to identify Alongi in a photographic lineup.  During the

trial, Julia identified Alongi as the person who punched her and Anthony. After Julia testified, but before Anthony testified, Julia told Anthony that she had identified Alongi in court as the person who assaulted her.

When Anthony testified he identified Alongi as the person who punched him. Anthony admitted that he was shown a photographic lineup, was able to narrow the suspects down to two photographs, but was unable to identify Alongi as the person who punched him. At the conclusion of the direct examination, Anthony stated he was "[a]bsolutely" certain that Alongi was the man "[t]hat reached through the car window and punched [him.]"

On cross-examination, defense counsel questioned Anthony as follows:

> Q . . . And you and your wife [Julia], you guys drove here together today, correct?
>
> A Yes.
>
> Q Okay. And you and your wife during these recesses, during lunch you guys are together, correct?
>
> A Correct.
>
> Q And you guys are sitting in a witness room out here together, correct?
>
> A Correct.
>
> Q Okay. And you were in there when your wife came out from after she testified, correct?
>
> A Yes.
>
> Q Okay. And she was upset, right?
>
> A First time.
>
> Q I'm sorry?
>
> A First time because she coming out twice.
>
> Q Okay. First time she was upset?
>
> A Yeah. Crying and.
>
> Q Okay. And she told you that she ID'd my client in court?
>
> A Yeah. She told me.

The State, on re-direct examination, addressed defense counsel's line of questioning:

> Q    Well, I just want to ask about the implications of [defense counsel]'s questions.
>
> A    Okay.
>
> Q    Your wife, did she tell you that she saw the guy who assaulted you in court today?
>
> A    Actually, I ask her did you see him? She say yes.
>
> Q    Okay.  My question to you is you've identified the defendant here in court, right?
>
> A    Yes.
>
> Q    Are you identifying this defendant based on your own recollection?
>
> A    On my recollection.
>
> Q    You're not doing so --
>
> A    Nah, nah, no, no.
>
> Q    Let me finish the question.
>
> A    Uh-huh.
>
> Q    Are you identifying the defendant because your wife told you that he was in the room?
>
> A    No.
>
> Q    All right.  [Anthony], why are you saying this is the man that beat you through the window on April 24th?
>
> A    I recognize now.
>
> Q    In person?
>
> A    In person.  I don't recognize in picture.

On re-cross examination, defense counsel revisited the issue:

> Q    Well, you heard . . . [the DPA] ask you about when you went back and talked to your wife, correct?
>
> A    Yes.
>
> Q    Okay.  And you said you asked her was he in there and she said yes, correct?
>
> A    Yes.
>
> Q    Okay.

A       No, I ask her did you rec -- did you see him.

Q       Okay.  And then she said yes, --

A       Yes.

Q       -- correct?

And then you're now in court and you're identifying Mr. Alongi --

A       Yes.

Q       -- as the person who as [sic] assaulted you, correct?

A.      Correct.


Alongi orally moved for mistrial while the jury was in deliberation:

> [DEFENSE COUNSEL]: Your Honor, at this time defense would make a motion for a mistrial based on a violation of the Court's rule.  Under HRE Rule 611 [sic], . . . the witness exclusionary rule will always be in effect from the hearing on any motions and/or jury selection until and including closing arguments.
>
> The basis for my motion is the testimony of Mr. Anthony Szaraz, who testified that after his wife, Julia Szaraz, had testified, she came back into the room where they were seated together, where they had been together the whole morning.  She came in.  He asked her specifically if [Alongi] was in the courtroom and she answered yes, after which [Anthony] came into the courtroom.  And after not being able to identify [Alongi] as the person who assaulted him in the sequential six-pack lineup, he points to [Alongi] with what he said was a hundred percent certainty that this was the man who assaulted him through the window.
>
> Also [Julia] did talk about a phone call she got from Detective Carreira.  However, I believe that that is an indirect violation of the witness exclusionary rule as invoked by the Court through its Rule 611 order.
>
> THE COURT: *It's a direct violation*.
>
> [DEFENSE COUNSEL]: Well, direct violation.  And based on -- you know, the rule itself is one of sequestration such that it's in place in order to protect one witness from kind of molding or shaping their testimony in order to align with the testimony of another witness.  And I believe that's what happened here in court, regardless of what [Anthony] says -- excuse me -- may have testified to on the stand.
>
> As such I believe that it prejudices [Alongi] such that he's not able to get a fair trial.  And that's the basis for our motion, Your Honor.

(Emphasis added.)  The circuit court heard further argument, then denied the motion for mistrial.  The court explained:

> THE COURT: After taking judicial notice of the records, files, and proceedings, in 1CPC-17-0001285, given the arguments of counsel and considering the testimony that's been provided in the case, Court has a couple of comments on the witness exclusionary rule.  The prosecutor's right.  It is a rule of sequestration to prevent the shaping of testimony between witnesses.  That being said, whether or not there's actual collusion or actual shaping of testimony is a determination to be made by the finder of fact.  And as long as the finder of fact has all of the circumstances of that violation before them to consider, they have the proper information with which to come to that conclusion.
>
> So what the Court is really finding is when reviewing the testimony of [Anthony], he was cross-examined vigorously with all of the facts of the violation of the in limine order and the witness exclusionary rule.  He was cross-examined on the statements that his wife made, the statements that he learned, and whether or not it impacted him when he made his in-court identification.
>
> If the jury ultimately finds that it undermines his credibility and his testimony, the jury has the information to make that conclusion.  The jury also has the relevant and all of the information with respect to the violation of the sequestration rule to make the adequate credibility determination for all of the witnesses.
>
> So given that, because he was subjected to cross-examination and the totality of the violation of the sequestration rule was brought to the jury's attention, the Court cannot conclude that now the technical violation of the rule resulted in the deprivation of [Alongi]'s right to a fair trial.
>
> So based on those findings and conclusions, Court respectfully denies the motion for mistrial.

"[T]he sanctions which a court chooses to attach to the violation of its sequestration order is a matter within the discretion of the court."  Elmaleh, 7 Haw. App. at 493, 782 P.2d at 889 (original brackets omitted) (citing Harkins v. Ikeda, 57 Haw. 378, 384, 557 P.2d 788, 792 (1976)).  Noncompliance with HRE Rule 615 does not require a new trial "unless the court's decision to allow the allegedly tainted testimony was an abuse of discretion or resulted in prejudice to the defendant."  Id. at 493, 782 P.2d at 890 (citation omitted).  "The defendant has the burden of proving that there was either prejudice or an abuse of discretion."  Id. at 493-94, 782 P.2d at 890 (cleaned up).

In Elmaleh, we held that the violation of the sequestration order was harmless because the complaining witness admitted on cross-examination that she was present during the conference between the prosecuting attorney and one of the State's witnesses (a police officer).  Id.

Similarly, in State v. Steger, 114 Hawai'i 162, 158 P.3d 280 (App. 2006), we concluded that a witness's viewing of an exhibit previously marked by other witnesses was harmless beyond a reasonable doubt because, among other reasons, "the circuit court took sufficient remedial action by permitting [the defendant] to cross-examine [the witness] about his viewing of [the exhibit]."  Id. at 175, 158 P.3d at 293 (citing Elmaleh, 7 Haw. App. at 494, 782 P.2d at 890).  The defendant's ability to cross-examine the police officer, we noted, "not only alerted the jury to what had happened but also permitted [the defendant] to attack [the witness]'s credibility by arguing that [the witness] had been influenced by his exposure to the previously-marked diagram."  Id.  "[T]he jury was able to judge for itself the extent to which [the witness]'s testimony may have been improperly influenced by his viewing of [the exhibit]."  Id.

Alongi, like the defendants in Elmaleh and Steger, failed to show that he was prejudiced or that the circuit court abused its discretion by denying his motion for mistrial.  The record shows that defense counsel extensively cross-examined Anthony on his interactions with Julia in the witness room.  The circuit court, consistent with the record, recognized that "[Anthony] was cross-examined on the statements that [Julia] made, the statements that he learned, and whether or not it impacted him when he made his in-court identification."  Defense counsel "alerted the jury" to Anthony's discussion with Julia in the witness room and "permitted [Alongi] to attack [Anthony]'s credibility[.]"  See Steger, 114 Hawai'i at 175, 158 P.3d at 293. As in Steger, Alongi's jury was able to judge for itself the extent to which Anthony's testimony may have been improperly influenced by his discussions with Julia in the witness room.  On the record before us, we cannot say that the circuit court abused

13

its discretion in denying the motion for mistrial based on Anthony's and Julia's violation of the witness exclusion rule.

### 4. The circuit court did not deprive Alongi of his constitutional right to testify.

Alongi contends he "was deprived of his constitutional right to testify where his purported waiver of that right was the result of coercion by [his defense counsel]." He acknowledges that the circuit court engaged him in an appropriate <u>Tachibana</u> colloquy,[3] and that the alleged conduct of his defense counsel is "not reflected in the record of the proceedings herein[.]" We therefore decline to address this issue, without prejudice to Alongi's right to file a Hawaiʻi Rules of Penal Procedure Rule 40 post-conviction petition.

### 5. The evidence was sufficient to support Alongi's conviction.

Alongi contends there was insufficient evidence to identify him as the perpetrator. In support of his argument, Alongi asserts that Julia, Anthony, and Billimon "provided conflicting, tainted and biased identifications of Alongi as the alleged perpetrator[, which] did not constitute substantial evidence[.]"

Alongi first argues that Julia's identification was not credible because she twice failed to identify Alongi in photographic lineups and she agreed on cross-examination that she was "not a hundred percent certain" about her in-court identification of Alongi.

Alongi next argues that Anthony's testimony was not credible because he twice failed to identify Alongi in photographic lineups and was only able to identify Alongi in court after Julia told him she had identified Alongi during her testimony, in violation of the witness exclusion rule.

---

[3]    See <u>Tachibana v. State</u>, 79 Hawaiʻi 226, 900 P.2d 1293 (1995).

Finally, Alongi argues that Billimon's testimony was biased and not credible because: (1) his testimony concerning his unobstructed view of the incident and whether he punched or kicked the perpetrator was contradicted by objective evidence presented at trial; (2) his identification of Alongi as the driver of the Chevy was colored by his prior encounters with Alongi; and (3) he admitted to speaking alone with the deputy prosecuting attorney about the case and also having a pending drunk driving case that was being prosecuted by the office of the prosecuting attorney.

Julia, Anthony, and Billimon all identified Alongi at trial. Although Alongi challenges their credibility, "it is within the jury's purview" to determine witness credibility. State v. Williams, 149 Hawaiʻi 381, 399, 491 P.3d 592, 610 (2021) (citing State v. Jhun, 83 Hawaiʻi 472, 483, 927 P.2d 1355, 1366 (1996) ("In a jury trial, the jury is the trier of fact and, thus, is the sole judge of the credibility of the witnesses and the weight of the evidence.")). There was substantial evidence adduced at trial to support Alongi's conviction.

## CONCLUSION

For the foregoing reasons, the Judgment of Conviction and Probation Sentence entered by the circuit court on June 26, 2018, is affirmed.

DATED: Honolulu, Hawaiʻi, October 7, 2022.

On the briefs:

Thomas Waters,
Law Office of Thomas Waters,
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge